UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X

In re                                                                    Case No. 800-22274-478
                                                                         Chapter 7

NINA MARIE BARBIERI,


                    Debtor.
-----------------------------------------------------------X

LOUIS BARBIERI,                                                          Adv. Pro. No. 803-1131-478


                    Plaintiff,


- against -


NINA MARIE BARBIERI, 189-30 REALTY
CORP. and JOHN S. PEREIRA, ESQ, as
Case Trustee,



                    Defendants.
-----------------------------------------------------------X

JOHN S. PEREIRA, ESQ. AS TRUSTEE                                        Adv. Pro. No. 06-1427-478
FOR THE ESTATE OF NINA MARIE BARBIERI,


                    Plaintiff,


- against -


LOUIS BARBIERI,


                    Defendant.
-----------------------------------------------------------X



## **Memorandum Decision**


**R. David Marquez, P.C.**                            **Jones & Schwartz, P.C.**
Counsel for Plaintiff                                 Counsel for Trustee
by: R. David Marquez. Esq.                            by: Harold D. Jones, Esq.
40 Keats Lane                                                    One Old Country Road, Ste. 284
Great Neck, NY 11023                                  Carle Place, NY 11514

This matter is before the Court pursuant to two adversary complaints filed in connection with the bankruptcy cases of Nina Marie Barbieri ( "Nina" or the "Debtor") and 189-30 Realty Corp. (the "Corporate Debtor"). The first adversary proceeding (adversary proceeding no. 03-1131-478) was commenced by Louis Barbieri ("Louis Barbieri" or the "Plaintiff"), seeking, *inter alia,* entry of a declaratory judgment finding that the Plaintiff is the true and beneficial owner of the shares of the Corporate Debtor. The second adversary proceeding (adversary proceeding no. 06-1427-478) was commenced by John S. Pereira, Esq., the Chapter 7 trustee (the "Trustee") against Louis Barbieri seeking certain relief in the event that the Plaintiff is successful in his adversary proceeding. If this Court finds that the Plaintiff is the true and beneficial owner of the shares of the Corporate Debtor, the Trustee seeks*, inter alia,* a declaratory judgment imposing an equitable lien on the stock of the Corporate Debtor for the benefit of the Debtor's estate. Based on the conduct of the parties in this case and the relevant law, the Court finds that the Plaintiff is not the true and beneficial owner of the shares of the Corporate Debtor, which shares shall remain in the name of Nina. As a result of this conclusion, there is no need for the Trustee to pursue adversary proceeding no. 06-1427-478. The following constitutes the Court's findings of fact and conclusions of law as mandated by Fed. R. Bankr. P. 7052.

## BACKGROUND

On January 21, 2000, the Corporate Debtor filed a voluntary petition for reorganization under the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York. On January 11, 2002, this Court entered an order converting this case from Chapter 11 to a case under Chapter 7 and the Trustee was appointed. As of the petition date, the

Corporate Debtor was the record owner of real property located at 189-30 37th Avenue, Flushing, New York (the "Flushing Property"). The Flushing Property consists of nine homes, specifically, 189-30, 189-32, 189-34, 189-36, 189-38 and 189-40 37th Avenue and 37-08, 37-10 and 37-12 190th Street, Flushing, New York.

On November 17, 2000, Nina filed an individual voluntary petition for reorganization under Chapter 11 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York. In her schedules, Nina listed an ownership interest in the following parcels of real property:

1) 86 East 3rd Street, New York, New York (the "New York Property"), consisting of approximately nineteen residential units  - fee ownership;

2) 34-32 43 Street, Astoria, New York - one-half ownership; and

3) 770 Anderson Avenue, Unit 11L, Cliffside Park, New York (the "New Jersey Condominium") - fee ownership.

Louis Barbieri, the Plaintiff, is Nina's father. According to Nina, she purchased the New York Property in 1986 using $200,000 of the Plaintiff's funds for the down payment. The Plaintiff testified that he agreed to make the down payment on this property and have Nina assume ownership of it to introduce her to the real estate business. The Court finds this down payment to be a gift from the Plaintiff to Nina. Nina also testified that she obtained the $55,000.00 down payment to purchase the New Jersey Condominium from the Plaintiff. With respect to the Astoria, New York property, she was given a one-half interest from her grandmother, and her aunt held the other one-half interest.   By virtue of her grandmother's gift, Nina is the actual owner of a one-half interest in this property.

Nina also listed in Schedule B of her petition her interest as sole shareholder of the Corporate Debtor, which held the Flushing Property as its asset.    On January 11, 2002, this Court entered an order converting this case from Chapter 11 to a case under Chapter 7, and the Trustee was appointed.

## FACTS

The Plaintiff has been incarcerated at the Greenhaven correctional facility located in Stormville, New York since February of 1992.  As of the date the Plaintiff was incarcerated, the Plaintiff  individually was the record owner in fee simple of the Flushing Property.  The Plaintiff owned other investment properties as well.  In late December 1996, or in the beginning of January 1997, the Plaintiff contacted Hector Marichal, Esq. ("Marichal"), a real estate lawyer, to assist him in obtaining a mortgage loan to pay off a tax lien encumbering the Flushing Property which unpaid lien could have resulted in foreclosure of the Property.  Marichal had previously represented the Plaintiff with respect to a number of matters including preparation of deeds, refinancing, and real estate closings.

The Plaintiff himself, from prison, attempted to solicit a loan to enable him to avoid foreclosure on the Flushing Property, but due to the Plaintiff's incarceration for the commission of a felony, mortgage lenders which were contacted regarding the loan were not interested in lending to the Plaintiff.  The Plaintiff did negotiate with Madison Home Equities, Inc. ("Madison"), which agreed to provide a secured loan.  According to the Plaintiff, Madison was only willing to loan at very high interest rates, and in order to avoid the issue of usury, the Plaintiff agreed to transfer the Flushing Property to a corporation, which would then obtain the

loan. The Plaintiff asked Marichal to form a corporation, and the Corporate Debtor was formed by Marichal in February 1997.  According to the Plaintiff, only a portion of the Flushing Property units were to be pledged as collateral for the loan, but there is no documentary evidence to support the Plaintiff's testimony.  The Plaintiff also testified that he advised Marichal that the shares of the Corporate Debtor were to be issued in the Plaintiff's name.  Nina was to attend the closing, along with Marichal, to sign any documents and to represent the Plaintiff's interests at the closing, as the Plaintiff was still incarcerated.  In support of his assertion that he never intended to have Nina own the shares of the Corporate Debtor, the Plaintiff produced a letter dated April 20, 1997 from the Plaintiff to Marichal wherein some of the proposed terms of the refinance are set forth and the Plaintiff writes that Nina is not to be involved with the Corporate Debtor "in any manner."  (Plaintiff's Ex. E, page R-12).

The closing took place on July 8, 1997.  Nina was present at the closing, along with Marichal, who acted as attorney for both the Corporate Debtor and Nina.  Nina had a continuing power of attorney on behalf of the Plaintiff which was executed in 1992, but she did not sign any documents at the closing as the Plaintiff's attorney-in-fact.   Despite the fact that Nina and Louis Barbieri had been negotiating the mortgage with Madison during the period prior to the closing, a different lender by the name of Bridge Funding, Inc. provided the funding at the closing. According to Nina's testimony, she was surprised that Bridge Funding, Inc. was being substituted as the lender in place of Madison.  Furthermore, according to Nina, Bridge Funding, Inc. required that the Flushing Property be pledged in its entirety, and that the New York Property be pledged as collateral for the loan as well.  In addition, according to Nina, Bridge Funding, Inc. advised her that all of the stock of the Corporate Debtor must be held by Nina, not

the Plaintiff, and the interest rate on the loan was increased by several percentage points. Nina

testified that she was concerned about these changes to the terms of the loan, and requested that

she be given time to consult with the Plaintiff about the changes to the loan terms. According to

her, she was advised by Bridge Funding, Inc. that the closing had to take place without any delay

or Bridge Funding, Inc. would refuse to provide the funds. Despite Nina's reservations, she

agreed to go forward with the closing. She made this choice. She could have terminated the

closing of the loan, but she chose to close the transaction and obtain the loan proceeds for the

benefit of the Corporate Debtor.

At the closing, Nina signed the following documents:

1) Resolution by the Board of Directors of the Corporate Debtor dated July 8, 1997, authorizing
the Corporate Debtor to borrow $350,000 from Bridge Funding, Inc. ("Resolution"). (Trustee's
Ex. 1-B). The Resolution is signed by Nina Barbieri as President and Secretary of the Corporate
Debtor, and Nina Barbieri also provided her signature as 100% owner of the shares of the
Corporate Debtor.

2) Affidavit for Confession of Judgment dated July 8, 1997, signed by Nina Barbieri as the
President and sole shareholder of the Corporate Debtor, in favor of Bridge Funding. (Trustee's
Ex. 1-B).

3) Hypothecation Agreement dated July 8, 1997 between Lawrence Linksman, President of
Bridge Funding, Inc., and Nina Barbieri as "stockholder" of the Corporate Debtor (Trustee's Ex.
1-B).

4) Blank Stock Power signed by Nina Barbieri as the 100% shareholder of the Corporate Debtor
(Trustee's Ex. 1-B).

The terms of the loan by Bridge Funding, Inc. were as follows:

1) Amount of loan - $350,000

2) Term - one year

3) Interest rate - 16%, plus five points at closing

4) Collateral pledged - Bridge Funding, Inc. was granted a first mortgage on the Flushing

Property and a third mortgage on the New York Property

5) Repayment terms - The Corporate Debtor was to repay the interest in twelve equal monthly installments of $4,667.00, commencing September 1, 1997, with the principal due on August 1, 1998.

The closing was completed and the loan funds were disbursed as follows:

Bridge Funding, Inc. - $14,000.00 for commission
Madison - $28,000.00 for commission
Granoff, Walker & Forlenza, P.C. - $6,210.00 for legal fees incurred by Bridge Funding, Inc.
Bridge Funding, Inc. - $3,733.00 for short interest, and $5,400.00 for tax escrow
Lamberta, Laurencelle & Baroff (SP) - $5,025.52 for legal fees incurred by Bridge Funding, Inc.
New York City Taxing Authorities - $143,681.35 to satisfy tax liens encumbering the Flushing Property
Gilbert Greenberg, Esq., counsel to Abraham Taub, administrator of estate of Sergio Taub - $65,000.00 in partial satisfaction of judgment against Louis Barbieri pursuant to a wrongful death action[1]
Hector Marichal, Esq. - $4,313.53 for legal fees incurred by the Corporate Debtor and Nina Barbieri
STG Associates - $74,609.60 for title company fees

(Trustee's Ex. 2, Tab B).

After these disbursements were made, there were no excess funds left from the loan to distribute to Nina, the Corporate Debtor or any other party.   After the payment of closing costs, the vast majority of the loan proceeds were used for the benefit of the Corporate Debtor.  The only payments made from the loan proceeds which benefitted Nina were the payments made to

---

[1]Gilbert Greenberg, Esq. was the assignee of an alleged second mortgage encumbering the New York Property, pursuant to an assignment by Hochheiser & Aronson, the law firm which represented Louis Barbieri in his criminal matter.  Hochheiser & Aronson had previously obtained the alleged second mortgage pursuant to an assignment from Lena Barbieri, the Plaintiff's mother.  Lena Barbieri had assigned the alleged second mortgage to Hochheiser & Aronson as partial payment of a judgment entered against Louis Barbieri for non-payment of legal fees.  The record is unclear as to why the alleged second mortgage was transferred from Hochheiser & Aronson to Gilbert Greenberg, Esq. At some time after the $65,000 was paid to Gilbert Greenberg, Esq., the alleged second mortgage was assigned to the Plaintiff.

Marichal for any counsel fees incurred at the closing.[2]   Despite the fact that Nina received no

other monetary benefit from the closing, Nina agreed to grant a mortgage lien against the New

York Property, which was solely owned by Nina, in favor of Bridge Funding, Inc.  As a result,

Bridge Funding, Inc. had a third mortgage against the New York Property.

On July 9, 1997, the day after the closing, Nina visited the Plaintiff at Greenhaven and

notified him that the closing of the loan had taken place.  According to the Plaintiff's testimony,

the Plaintiff was advised within one week of the closing that the terms of the borrowing as he

knew them were changed at the closing.  The Plaintiff testified that he was advised by Nina that

the shares of the Corporate Debtor had been pledged or transferred to Bridge Funding, Inc., and

that Bridge Funding, Inc. physically held the shares.   Despite having been so advised, the

Plaintiff took no action against Bridge Funding, Inc. in any respect until several years later when

he filed a complaint against Bridge Funding, Inc. in New York State Supreme Court, Queens

County  in August, 2001, seeking to have the loan rescinded on the grounds of usury and duress.[3]

(Trustee's Ex. 1, Tab C).   Although the Plaintiff asserted in the complaint that he is the

beneficial owner of the shares of the Corporate Debtor, the complaint did not include any cause

of action to have the shares of the Corporate Debtor transferred to his name.  According to the

---

[2]Although counsel to Louis Barbieri argues that Nina received a benefit when Gilbert Greenberg, Esq., was paid $65,000 from the closing proceeds in partial satisfaction of his judgment against Louis Barbieri because it was secured by an alleged second mortgage on the New York Property, the payment to Gilbert Greenberg, Esq. did not cause the alleged second mortgage to be removed or reduced from the New York Property.  It was assigned to Louis Barbieri with the full amount still due and owing.  Therefore, the only party receiving a benefit from the transfer of $65,000 of the loan proceeds to Gilbert Greenberg, Esq. was Louis Barbieri.

[3]This lawsuit was ultimately dismissed on four separate grounds, which dismissal was affirmed on appeal.

Plaintiff, he could take no action to have the shares of the Corporate Debtor transferred to him because it was a "done deal." (Trial transcript of August 20, 2007, page 111). Louis Barbieri appears to have accepted and acknowledged the fact that Nina was the sole shareholder of the Corporate Debtor.

Despite the Plaintiff's apparent acquiescence regarding the transfer of the shares of the Corporate Debtor to Nina, the Plaintiff continued his involvement in the management of the Flushing Property and the New York Property.   For example, the Plaintiff corresponded with one of his attorneys, Manuel Gomez, Esq., with regard to the rent strike affecting the New York Property. (Plaintiff's Ex. D, Section C).   In fact, as early as September 16, 1997, the Plaintiff made references to the possibility of directing Nina to file for bankruptcy protection to gain some leverage against the tenants and the first mortgagee in the ongoing rent strike.   (Plaintiff's Ex. D, page C-9).   The Plaintiff's correspondence also reveals that he was interested in selling the New York Property as early as July 5, 1997, and his interest continued after the closing on the Bridge Funding, Inc. refinance, which had taken place on July 8, 1997. (Plaintiff's Ex. D, pages C -14, C-15).

Louis Barbieri continued to control the finances of the Flushing Property and the New York Property.  Prior to and after the formation of the Corporate Debtor, all income from the Flushing Property was deposited into the Plaintiff's personal account.  No separate bank account was maintained for the Corporate Debtor.  The Plaintiff utilized this personal bank account for the deposit of all of the income from the Flushing Property and from other investment properties owned by the Plaintiff, which practice continued even after the closing on the refinance.  The Plaintiff also used this personal bank account to make deposits from income earned on the New

York Property, and to make payments for the benefit of the New York Property and for the benefit of Nina.  The funds deposited into the Plaintiff's personal bank account were not segregated as to each source, so funds generated from the property owned by the Corporate Debtor were commingled with funds generated by  properties owned by the Corporate Debtor and by the Plaintiff.  This practice continued until a receiver was appointed to collect the rents from the tenants inhabiting the Flushing Property on July 1, 1998.

On March 24, 1998, Nina filed her first petition for relief under Chapter 13 of the Bankruptcy Code.   On March 8, 1999, the Plaintiff filed a proof of claim in Nina's first case, asserting an ownership interest in the shares of the Corporate Debtor.  During the pendency of that Chapter 13 case, Nina made a motion seeking authorization to sell her New York Property to a third party, which was opposed and ultimately denied by the Bankruptcy Court.  On July 22, 2998, Nina's Chapter 13 case was converted to a case under Chapter 7 of the Bankruptcy Code. John S. Pereira was appointed the Chapter 7 trustee.  Nina appealed  the Court's decision to convert her case to Chapter 7 without permitting her to seek the dismissal of the case, and ultimately, after a further appeal to the Court of Appeals for the Second Circuit, Nina's case was dismissed pursuant to an order from the Second Circuit dated December 23, 1999.  No distribution was made to parties filing claims in the case, including the Plaintiff.

On January 1, 2000, the Corporate Debtor filed this petition for relief under Chapter 11 of the Bankruptcy Code.  David Singer, Esq. represented the Corporate Debtor in the bankruptcy proceeding from the date the petition was filed to the date this case was converted to Chapter 7 on January 11, 2002.  According to Mr. Singer's testimony, he was advised by Nina and the Plaintiff that Nina had the authority to sign documents on behalf of the Corporate Debtor, but

that the Plaintiff was the "beneficial owner" of the shares of the Corporate Debtor because the

Corporate Debtor's assets were originally assets belonging to the Plaintiff.  Nina and the Plaintiff

are listed in the Statement of Financial Affairs as "indirect owners" of the shares of the

Corporate Debtor.  In the affidavit filed pursuant to Local Bankruptcy Rule 1007-3, Nina is

described as the sole shareholder of record of the Corporate Debtor, and the nominee of the

Plaintiff.  Mr. Singer testified that he did not examine any documents to determine whether the

Plaintiff had an ownership interest in the Corporate Debtor.

On November 17, 2000, Nina individually filed a petition for relief under Chapter 11 of

the Bankruptcy Code.  Mr. Singer represented Nina in this case until it was converted to Chapter

7 on January 11, 2002. At the time that the Corporate Debtor and Nina filed petitions for relief

under Chapter 11 of the Bankruptcy Code, St. Nicholas Capital Funding, Ltd., ("St. Nicholas"),

as the assignee of Bridge Funding, Inc., held a blanket first mortgage on the Flushing Property

and a third mortgage on the New York Property.  Pursuant to an order of this Court dated April

19, 2001, the Court authorized the sale of the New York Property to Esther Braver for $855,000

("Sale Order").  The Sale Order recognized that the Plaintiff was listed as having a second

mortgage on the New York Property, and subordinated the Plaintiff's position to the position of

St. Nicholas in order to ensure that there would be sufficient funds from the sale to pay off the

claim of St. Nicholas in full.  According to the Sale Order, any claim asserted by the Plaintiff

against the remaining proceeds generated from the sale of the New York Property after paying

the first mortgage and the third mortgage in full would be limited to a total of $240,000.[4]    As a

---

[4]Ultimately, by memorandum decision and order dated April 12, 2005, the Court found
that the alleged mortgage claimed by the Plaintiff was actually in the nature of an infusion of
capital, and claim number five filed by the Plaintiff in Nina's case which asserted a right to
payment pursuant to the purported second mortgage was expunged, leaving the Plaintiff with no

result of the sale of the New York Property, the St. Nicholas claim, which was secured by mortgages on the New York Property as well as the Flushing Property, was paid in full.

During the time period surrounding the sale of the New York Property, the Plaintiff never filed any document with the Court in either the Debtor's case or the Corporate Debtor's case indicating that he claimed an ownership interest in the stock of the Corporate Debtor. At most, Mr. Singer has testified that he orally advised the Court that Louis Barbieri may have an interest in the shares of the Corporate Debtor at the time of the sale of the New York Property. Furthermore, the Plaintiff never sought to have the Corporate Debtor's case dismissed based on Nina's alleged lack of authority to act on behalf of the Debtor Corporation. The Corporate Debtor did not file a proof of claim in Nina's bankruptcy case, and all claims filed by the Plaintiff in Nina's bankruptcy case have been expunged pursuant to orders of this Court.

After the Corporate Debtor's case and Nina's case were converted on January 11, 2002, the Trustee liquidated all of the remaining assets in each case. On March 3, 2002, Louis Barbieri commenced adversary proceeding no. 03-1131-478 seeking, *inter alia,* a declaratory judgment that he is the beneficial owner of the shares of the Corporate Debtor. On September 5, 2006, the Trustee commenced adversary proceeding no. 06-1427-478 on behalf of Nina's estate seeking the imposition of an equitable lien against the stock of the Corporate Debtor in the event the Court finds that Louis Barbieri is the beneficial owner of this stock. In Louis Barbieri's answer, he asserts several affirmative defenses including a right to set-off against any judgment in the Trustee's favor, based on funds expended by Louis Barbieri for the benefit of Nina. The one

_____

claim to any proceeds remaining from the sale of the New York Property after payment of the first mortgage and the mortgage held by St. Nicholas. In any event, counsel to the Debtor testified that the amount remaining from the sale of the New York Property after satisfying the two mortgages was approximately $1,000.

counterclaim asserted by Louis Barbieri against the Trustee is that any lien asserted by the Trustee against the property or shares of the Corporate Debtor is invalid as no such lien was recorded in favor of the Trustee.

## DISCUSSION

The Plaintiff's claims in the adversary proceeding he commenced against the Debtor are centered on the assertion that he is the true owner of the shares of the Corporate Debtor. In order to sustain his cause of action, the Plaintiff must prove that he is the rightful owner of the shares of the Corporate Debtor, regardless of who is listed as the owner of the stock certificates. New York law applies to determine the rights of the parties to the shares of the Corporate Debtor pursuant to *Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914 (1979).

Louis Barbieri relies on two arguments to assert that he is the beneficial owner of the shares of the Corporate Debtor. His first argument is that Nina acted deceitfully at the closing on the refinance and that she exceeded her authority as Louis Barbieri's agent when she consented to having the shares of the Corporate Debtor issued to her. Louis Barbieri's second argument is that the events which occurred at the closing on the refinance gave rise to the establishment of a constructive trust in favor of Louis Barbieri, so that he is the beneficial owner of the shares of the Corporate Debtor.

With respect to his first argument, Louis Barbieri cites to the laws of agency to support his claims. Under New York law, if an agent acts outside the scope of his or her actual authority, the principal may not be bound by the agent's actions. *Ford v. Unity Hospital,* 32 N.Y.2d 464, 472, 299 N.E.2d 659, 664, 346 N.Y.S.2d 238, 244 (1973). However, when a principal gives authority to the agent so that a third person would reasonably believe that the agent is acting

within the scope of his or her authority, the acts of the agent may be binding on the principal.

*Marfia v. T.C. Ziraat Bankasi, New York Branch,* 100 F.3d 243, 251 (2nd Cir. 1996).

Furthermore, even if an agent acts outside the scope of his or her authority, an agent's actions

can be ratified by the principal where the principal has "full knowledge of the material facts

relating to the transaction" and then fails to timely repudiate the unauthorized acts of the agent.

*BS Sun Shipping Monrovia v. Citgo Petroleum Corp.,* 509 F. Supp.2d 334, 347(S.D.N.Y. 2007)

*(*citing *Chemical Bank v. Affiliated FM Ins. Co.,* 169 F.3d 121, 128 (2d Cir. 1999)).  Louis

Barbieri alleges that Nina was his agent at the closing pursuant to the power of attorney he

executed in 1992.  Louis Barbieri further asserts that Nina was not authorized to have the shares

of the Corporate Debtor issued to her, nor was she authorized to consent to any changes to the

terms of the financing to be provided by Madison.  The power of attorney in question is not a

limited power of attorney, and there is no document in evidence from Mr. Barbieri to Madison or

to Bridge Funding, Inc. which circumscribes Nina's authority at the closing.  In addition,

Marichal acted as the attorney for the Corporate Debtor, for Nina and for Louis Barbieri at the

closing.  He did not object to the actions taken by Nina, and there is no evidence that he took any

actions on Louis Barbieri's behalf to cancel the transaction or otherwise prevent the shares of the

Corporate Debtor from being issued in the name of Nina.

 The only evidence this Court has that Nina acted outside the scope of her authority is the

self-serving testimony of Louis Barbieri and Nina, and one letter produced by Louis Barbieri

dated April 20, 1997, from Louis Barbieri addressed to Marichal, which states that Nina is not to

be involved with the Corporate Debtor in any manner.  (Plaintiff's Ex. E, page R-12).  Although

the letter was admitted into evidence, there is no evidence that it was mailed to Marichal, and

Marichal testified that he did not recall receiving this letter. (Trial transcript of August 13, 2007, pages 34-35).

The Court does not find that Nina and/or Marichal acted outside the scope of their authority at the closing because there is insufficient evidence regarding what actions Nina and Marichal were authorized to take on Louis Barbieri's behalf. The testimony of Louis Barbieri and Nina is not credible on this issue, and it is just as likely that Nina and Marichal were authorized to ensure that the closing took place regardless of any changes made at the closing. In addition, even if Nina acted outside the scope of her authority as Louis Barbieri's agent, she had apparent authority to close on the transaction with the changed terms.

The term "apparent authority" is defined in § 2.03 of the Restatement (Third) of Agency, as follows:

> Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor had authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.

No evidence was produced which indicates that Bridge Funding, Inc. was aware of any limits on the power of attorney granted by Louis Barbieri to Nina. Furthermore, it was reasonable for Bridge Funding, Inc. to believe that Nina had authority to act on behalf of the Corporate Debtor with respect to any matters arising at the closing. Louis Barbieri sent Nina to the closing on his behalf. Assuming that Nina's actions as the sole shareholder of the Debtor Corp. were wrongful, Louis Barbieri put Nina in the position to take such actions. Therefore, any actions she took at the closing, whether as the President, Director or sole shareholder of the Corporate Debtor, or as Louis Barbieri's agent, were traceable to Louis Barbieri's own conduct.

15

Even putting aside the issue of whether Nina acted outside the scope of any actual authority, or whether Nina acted with apparent authority, Louis Barbieri ratified the conduct of Nina and Marichal after the closing took place.  Louis Barbieri admits he knew what took place at the closing on the refinance shortly thereafter, and that he took no action to have the shares of the Corporate Debtor transferred into his name.  The Plaintiff never sought to reverse or rescind the transaction, which would have required the return of the $350,000 borrowed from the lender.

Under New York law, where an agent's acts are not authorized by the principal, the principal has a duty to repudiate the act within a reasonable time period after receipt of information of the unauthorized acts.  *Velez v. Vassallo,* 203 F. Supp.2d 312, 322 (S.D.N.Y. 2002) (citing *C.E. Towers Co. v. Trinidad & Tobago Airways Corp.,* 903 F. Supp. 515, 526 (S.D.N.Y.1995)).  In this case, Louis Barbieri had ample opportunity to disavow the issuance of the stock and to correct this matter after the closing.  If Louis Barbieri truly objected to Nina's ownership of the stock of the Corporate Debtor, he could have acted within a relatively quick time period after the closing.  He had at least two attorneys working for him in civil matters at this time, including Marichal.  Given the volume of letters he generated at the time period around the closing and fact that he kept a close watch on all of his business interests (whether they were in Nina's name or his own name), it is clear that Louis Barbieri made a conscious decision to keep the funds from Bridge Funding, Inc., keep the shares of stock in Nina's name, and not to challenge Nina's ownership interest while he was incarcerated.  Therefore, even if Nina and Marichal acted outside the scope of their authority on behalf of Louis Barbieri, Louis Barbieri ratified the issuance of the shares of the Corporate Debtor in Nina's name.

Louis Barbieri's second attack on Nina's ownership of the shares of the Corporate Debtor

is based on his argument that Nina had bare legal title to the shares, and that he is the beneficial

owner of the shares of the Corporate Debtor.  According to applicable New York law, a

"beneficial" or "equitable" owner of an asset is "[o]ne recognized in equity as the owner of

something because use and title belong to that person, even though legal title may belong to

someone else. . . ."  *In re Worldcom, Inc.,* 343 B.R. 430, 439 (Bankr. S.D.N.Y. 2006) (citing

*Black's Law Dictionary* 1130 (7th Ed. 1999)).

    Louis Barbieri's claim rests on his assertion that Nina holds the shares of the Corporate

Debtor in a constructive trust for the benefit of Louis Barbieri.  In order to assert a claim for a

constructive trust, there must be a confidential or fiduciary relationship, a promise or agreement,

either express or implied, a transfer in reliance on that agreement, the breach of that promise, and

unjust enrichment at the expense of the transferor.  *Palazzo v. Palazzo*, 121 A.D.2d 261, 263,

503 N.Y.S.2d 381, 383 (1st Dep't 1986), citing *Sharp v. Kosmalski,* 40 N.Y.2d 119, 121, 351

N.E.2d 721, 386 N.Y.S.2d 72 (1976).   The remedy of constructive trust is a flexible one, and

New York courts do not require that the facts always fit within the framework of these four

elements.  *Counihan v. Allstate Ins. Co.,* 194 F.3d 357, 362 (2nd Cir. 1999).  However, the Court

of Appeals for the Second Circuit has recognized that imposition of a constructive trust requires

at a minimum that the continued holding of the property in question by the defendant be deemed

unconscionable and inequitable, and the return of the property be necessary to prevent unjust

enrichment.  *Id.* at 361.

    It is clear from the record that the Plaintiff and Nina had a confidential relationship, that

property purchased by Louis Barbieri had been transferred to the Debtor Corporation, and that

Nina became the sole shareholder of the Debtor Corporation.  It is also true that Louis Barbieri

17

had control over the Corporate Debtor and that he and Nina treated the Corporate Debtor as an asset belonging to Louis Barbieri.  All of the rents collected from the property owned by the Corporate Debtor went into Louis Barbieri's personal account, as did the rents from the New York Property.  This account was used to pay for Nina's expenses, the Corporate Debtor's expenses, and the expenses of Louis Barbieri.

Furthermore, even though Louis Barbieri was incarcerated at all times after Nina became the sole shareholder of the Corporate Debtor, he orchestrated most if not all of the actions taken by the Corporate Debtor, using Nina as a nominee.  It is also clear that Louis Barbieri orchestrated most if not all of the actions taken by Nina with respect to the commercial real estate she held in her own name, and that he gave her funds for the New York Property, which was the largest asset in Nina's case.  Despite the fact that Louis Barbieri usurped the benefits of the Corporate Debtor without having legal title to the shares of the Corporate Debtor, he cannot, as a matter of equity, claim that Nina's continued ownership of the shares of the Corporate Debtor is unconscionable and inequitable.  To the contrary, it would be inequitable to grant the Plaintiff the relief he seeks in his complaint because the creditors of Nina's estate would be harmed.

Whenever a party seeks to invoke the court's equitable powers, the party's claims are subject to any applicable equitable defenses.  *British Columbia Investment Co. v. Federal Deposit Insurance Corp.,* 420 F. Supp. 1217, 1222 (S.D.Ca. 1976).  According to the Trustee, Louis Barbieri has no right to claim entitlement to equitable relief because his claim is barred by laches, waiver and unclean hands.

Laches "is an equitable defense that bars a plaintiff's . . . claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." *Ikelionwu v.*

18

*United States,* 150 F.3d 233, 237 (2d Cir. 1998).   The Court must examine the circumstances peculiar to this case to determine whether the Trustee may use laches as a defense to the Plaintiff's claims. *Tri-Star Pictures, Inc. v. Leisure Time Prods, B.V.,* 17 F.3d 38, 44 (2d Cir. 1994).  In this case, Louis Barbieri knew that the stock of the Corporate Debtor was not issued in his name shortly after the closing took place in 1997, and other than filing a proof of claim in Nina's first bankruptcy case, which case was dismissed, he took no action to obtain ownership of the stock of the Corporate Debtor.  This remained true even after the Corporate Debtor filed a bankruptcy petition in 2000.  The time to assert his rights with respect to the stock of the Corporate Debtor came and passed well before the New York Property was sold.  It is clear that Louis Barbieri intended to have the sale proceeds from this asset of Nina's applied to pay off the St. Nicholas mortgage in full, rather than use assets of the Corporate Debtor to pay the St. Nicholas mortgage.

Louis Barbieri misled the Court and the creditors of both cases by failing to divulge and pursue his claims of ownership of the shares of the Corporate Debtor prior to the sale of the New York Property.  The creditors of Nina's estate were prejudiced by Louis Barbieri's failure to act. Had the creditors and the Court known at the outset of Nina's Chapter 11 case that Louis Barbieri would be seeking ownership of the shares of the Corporate Debtor, the propriety of using an asset belonging to Nina to pay off a debt jointly owed by an unrelated debtor would have been called into question.  Instead, Louis Barbieri did not bring a timely action to determine his rights to the stock of the Corporate Debtor, and he agreed to subordinate his alleged second mortgage on the New York Property to ensure that the St. Nicholas mortgage would be paid from the proceeds generated by the sale of the New York Property.  Therefore, even if the Court found that Louis Barbieri's claim for the imposition of a constructive trust passed muster, laches

19

would defeat Louis Barbieri's claim.

Waiver also applies as a defense against Louis Barbieri's assertion of a constructive trust against the shares of the Corporate Debtor. In the absence of a significant public policy to the contrary, all rights that a person is legally entitled to may be waived. *Hadden v. Consolidated Edison Co. of New York, Inc.,* 45 N.Y.2d 466, 469 (1978). Under New York law, waiver is defined as "an intentional relinquishment and abandonment of a known right or privilege." *Chapman v. Choicecare Long Island Term Disability,* 288 F.3d 506, 510 (2d Cir. 2002). Waiver may result from an express agreement or may be implied from the surrounding circumstances. *In re French,* 162 B.R. 541, 546 (Bankr. D.S.D. 1994). By failing to divulge his claims of ownership of the Corporate Debtor's stock, which claims were first made four months after the sale of the New York Property in the State Court complaint against Bridge Funding, Inc., Louis Barbieri has waived his right to make such claims against the Debtor's estate. *McManus v. Board of Education,* 87 N.Y.2d 183, 189, 661 N.Y.S.2d 411 (1995). Louis Barbieri's conduct in the time period following the issuance of the shares of the Corporate Debtor to Nina is entirely inconsistent with one who asserts ownership of the Corporate Debtor's stock.

Finally, Louis Barbieri has unclean hands, which bars him from succeeding on his claim. "[W]hile equity does not demand that its suitors shall have led blameless lives, as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue." *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.,* 324 U.S. 806, 814-15, 65 S.Ct. 993, 89 L.Ed. 1831 (1945). In this case, Louis Barbieri's conduct has been suspect at best and outright misleading at worst. Louis Barbieri was content to allow the Corporate Debtor's case to wend its way through the bankruptcy proceeding without ever bringing an action regarding his alleged ownership rights to the Corporate Debtor's stock until

20

he had concerns that the Corporate Debtor would not emerge from Chapter 11 with the bulk of

its assets intact.  It was only after the conversion of the Corporate Debtor's case and Nina's case

that Louis Barbieri filed the adversary proceedings.  An honest party with a legitimate claim

against the shares of the Corporate Debtor would have brought some action in this Court as soon

as he received notice of the filing.  The reason Louis Barbieri did not do so was because he was a

willing participant in the case and was happy to bide his time until the St. Nicholas obligation

could be paid off from assets of Nina's case.  This conduct precludes Louis Barbieri from

prevailing on his equitable claim to the shares of the Corporate Debtor.

Based on the Court's findings, there is no need to proceed on the Trustee's claims set

forth in adversary proceeding no. 06-1427-478.  The one counterclaim alleged by Louis Barbieri

in that adversary proceeding is dismissed as it is dependent upon a finding that the Trustee is

entitled to an equitable lien on property of the Corporate Debtor.[5]

## CONCLUSION

1.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and

1334(b).  This proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),

(B) and (O).

2.  Louis Barbieri does not have legal ownership of the shares of the Corporate Debtor, and

Louis Barbieri has not sustained his burden of proof with respect to his claim that Nina acted

without authorization when she had the shares of the Corporate Debtor issued in her name.

3.  Even if Nina had acted outside her scope of authority under the power of attorney executed

---

[5]The counterclaim is also subject to dismissal as a matter of law.  A party with a right to
an equitable lien does not need to have such lien recorded.  An equitable lien is a right granted
despite the existence of a recorded lien on property.

by Louis Barbieri in favor of Nina in 1992, and she lacked apparent authority to act on behalf of

Louis Barbieri or the Corporate Debtor, Louis Barbieri ratified her actions at the 1997 closing.

4.  Louis Barbieri has failed to satisfy the requirements for the imposition of a constructive trust

against the shares of the Corporate Debtor in his favor.  Even if Louis Barbieri met the necessary

requirements, his claim would be defeated due to the equitable considerations of  waiver, laches

and unclean hands.

5.  The Plaintiff's adversary proceeding no. 03-1131-478 seeking a declaratory judgment finding

the Plaintiff to be the true and beneficial owner of the shares of the Corporate Debtor is denied.

The Trustee's adversary proceeding no. 06-1427-478 is dismissed, along with Louis Barbieri's

counterclaim.

Orders shall be entered in each adversary proceeding simultaneously with this Memorandum

Decision.

Dated: Central Islip, New York
       November  **29**, 2007                              By: **/s/ Dorothy Eisenberg**
                                                               Dorothy Eisenberg
                                                               United States Bankruptcy Judge